# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

Juan B. Portorreal;

Yuderka Nunez;

P.A.P., a minor, by and through
her parents,

               Plaintiffs,

v.

John and/or Jane Does 1-10, Individually, and
in their Official Capacities as police officers
with the New York Police Department;

Police Officer Polanco (Full name presently
unknown to Plaintiffs);

New York City Police Department ("NYPD");

City of New York,

               Defendants.

JURY TRIAL DEMANDED

Civil Action No.

---

## **COMPLAINT**

## **INTRODUCTION**

Through this lawsuit, Plaintiffs seek some measure of justice for the outrageous

misconduct of some New York City police officers and for the policies and lack of

adequate training and supervision behind such misconduct.

Plaintiff Juan B. Portorreal is a retired New York City Corrections officer, with a long career of public service.  He is diabetic and a dialysis patient.  One day while he was driving in Manhattan with his six year old daughter, Plaintiff P.A.P., he felt light-headed and drove around looking for a restaurant to get something to eat to regulate his blood sugar.  He parked his car and then passed out in a diabetic coma. Shockingly, while he was unconscious and in front of his daughter, New York City police officers opened his car door, smashed his face against the window, threw him to the street on his head, dragged him across the sidewalk, handcuffed him, drove him to a precinct house and kept him locked in custody, handcuffed for hours, unconscious, and without any medical treatment for his diabetic coma.  They kept his family from knowing where he was or how he was, knowing they were terribly worried and they refused his wife's (Plaintiff Yuderka Nunez) repeated calls to get him the emergency medical treatment he needed.  It is the Plaintiffs' hope that no one ever should be treated in this manner again and that this lawsuit will help toward that end.

## JURISDICTION AND VENUE

1.      This action arises under the authority vested in this Court by virtue of 42 U.S.C. §1983, with jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question); 28 U.S.C. §1343 (a)(3) (Civil Rights Action), and 28 U.S.C. §1367 (a)

(Supplemental Jurisdiction), as well as the 4th and 14th Amendments to the United

States Constitution.

2.      This Court is an appropriate venue for this action pursuant to 28 U.S.C.

§ 1391(b).  All events relevant to this lawsuit occurred in New York County, New

York, within this judicial district.

## PARTIES

3.      Plaintiff Juan B. Portorreal is an adult resident-citizen of Queens County,

New York, and is retired from his position as a corrections officer with the New York

City Department of Corrections.

4.      Plaintiff Yuderka Nunez is an adult resident citizen of Queens County, New

York and is married to Plaintiff Juan B. Portorreal.

5.      Plaintiff P.A.P. is a minor child.  She is the daughter of Plaintiffs Portorreal

and Nunez.  She resides with her parents at their home in Queens County, New York

and she brings this action through her father, Juan B. Portorreal, as her next friend.

6.      Defendants John and Jane Does 1-10 were, at all times relevant to this lawsuit,

officers with the New York Police Department who were personally involved in the

events that are the subject of this lawsuit as described more fully below and whose

true identities are presently unknown.

7.      Defendant Police Officer Polanco, whose full name is not presently

known to Plaintiffs, was at all relevant times a police officer employed by the NYPD.[1]

8.      Defendant NYPD is an agency of the City of New York charged with law enforcement.  Its headquarters are located in New York County.

9.      Defendant City of New York ("City") is a municipal corporation organized and existing under the laws of the State of New York and it maintains its principal office in New York County.

## **FACTS**

10.     At the time of the incident at issue in this lawsuit, Plaintiff, Juan B. Portorreal ("Portorreal"), was a 62 year old retired corrections officer.

11.     At the time of the incident at issue, Portorreal suffered from diabetes, for which he takes insulin and he was a dialysis patient.

12.     On or about November 28, 2021, Portorreal and his wife and two daughters were in a car in the borough of Manhattan, New York, with Portorreal driving.

13.     Portorreal dropped off his wife and one daughter so that they could go shopping and he continued driving with his six year old daughter, Plaintiff P.A.P.

14.     Portorreal began to feel light-headed while driving and felt that he needed to get something to eat to regulate his blood sugar.

---

[1] Mr. Portorreal believes "Polanco" to be the name of one of the NYPD officers who arrested him.  He is not certain.

15.     Portorreal drove around the Washington Heights neighborhood where he had just dropped off Plaintiff Yuderka Nunez ("Nunez") and their other daughter, and he began looking for a place to eat.

16.     Portorreal saw a pizzeria in Washington Heights, found a parking place nearby and parked his car, with Plaintiff P.A.P. with him in the car.

17.     Immediately after parking his car, Portorreal lost consciousness and slumped over in the driver's seat in a diabetic coma.

18.     Shortly after Portorreal parked his car, and while he was unconscious in a diabetic coma, Police Officer Polanco ("Polanco") and John Doe 1, another police officer, and possibly other Defendant John Doe police officers, approached Portorreal's car and opened the driver's side door.

19.     Upon information and belief, Defendants Polanco, John Doe 1, and all other John Doe Defendants on the scene at that time were assigned to the NYPD's 34th Precinct.

20.     It was immediately obvious to the Defendants who approached Mr. Portorreal's car that he was unconscious and that P.A.P. was in the car with him.

21.     Immediately after opening Mr. Portorreal's car door, Defendant Polanco or another John Doe Defendant smashed Mr. Portorreal's face against the window of his door and then dragged him outside of his car, throwing him down hard onto

the sidewalk so that he landed directly on his head.

22.   These Defendants then dragged the unconscious Mr. Portorreal on the sidewalk, put him in handcuffs while unconscious and then placed him in an official NYPD patrol car and, upon information and belief, transported him to an NYPD station house where, among other things, he was left lying on a cell floor, unconscious.

23.   The Defendants kept Mr. Portorreal in handcuffs for hours, while he was unconscious and after he finally regained consciousness, and even after they knew he had been in a diabetic coma and certainly had not committed any crime, notwithstanding his complaints, once he regained consciousness, that the handcuffs were so tight they were causing him excruciating pain.

24.   The pain from the prolonged use of the handcuffs on Mr. Portorreal, tightened to the extreme extent the Defendants tightened them has caused Mr. Portorreal lasting pain and has left him with difficulty using his hands to write and for other tasks.

25.   From the beating he received from the police officers, Plaintiff Portorreal had to endure tremendous pain and suffering, including pain and trauma to his head, knees, wrists, face, back, and things.  He was in excruciating pain.

26.   The six year old Plaintiff, P.A.P., was in the car when Defendants Polanco

and John Doe 1 (and perhaps other John Does) approached the car, and she saw

them smash her father's face into his car window, drag him from the car, throw

him on the sidewalk on his head, drag him on the sidewalk, and handcuff him.

27.     P.A.P. was very frightened and to this day is afraid whenever she sees a

police officer because of what she saw police officers do to her father on that day

and from the whole set of events surrounding this incident.

28.     After she watched her father being slammed into the window, and beaten

and dragged, P.A.P. was approached by a female police officer who took P.A.P. in

a police car to the local police station, believed to be the 34th precinct.

29.     P.A.P. was shocked and scared from what she saw Defendant Polanco and

the John Doe police officers Defendants do to Plaintiff Portorreal and from being

separated from Portorreal and being taken away in a police car by a police officer

she did not know.

30.     Meanwhile, Plaintiff Nunez had been trying to call her husband, Plaintiff

Portorreal by the telephone after he dropped her off that afternoon/evening and she

grew concerned and worried when her calls went unanswered.

31.     Nunez received a telephone call that evening from a police officer who told

her that her husband had been in an accident and that she needed to come to the

34th precinct to pick up her daughter, Plaintiff P.A.P.

32.    Plaintiff Nunez asked the police officer on the telephone whether her husband was ok and the police officer refused to answer her question and just repeated that she (Nunez) had to come immediately to the 34th precinct station house.

33.    When Nunez arrived at the 34th precinct station house, a police officer, believed to be the female officer who took P.A.P. from the scene of the incident to the 34th precinct, told her that her husband, Plaintiff Portorreal was drunk.

34.    Plaintiff Nunez told the police officer that her husband does not drink and could not have been drunk.  She told the officer that he is a diabetic, had said he was hungry, and that Plaintiff Portorreal likely had gone into a diabetic coma.  She also told the police officer and others that her husband is a dialysis patient.

35.    When Plaintiff Nunez told this female officer and another female officer near her that her husband does not drink and that he likely went into a diabetic coma, the two female police officers reacted by laughing at her and at what she had said.

36.    These two Jane Doe Defendant female police officers were in NYPD uniforms and Plaintiff Nunez believes them to be of Hispanic heritage.

37.    Plaintiff Nunez tried to impress upon these two Jane Doe Defendants the importance and urgency with which she had to try to speak with her husband and

get him the medical care she knew he would need at this stage of a diabetic coma;
but they refused to listen to her, told her she has no right to speak to him or to any
additional information, and they ordered her to leave the station house and go
home.

38.     Plaintiff Nunez stayed at the 34th precinct station house for hours, begging
for information about her husband, to no avail.  She told another police officer at
the 34th precinct that she was sure her husband was in a diabetic coma and she
needed to get an ambulance for him to get him immediate medical care; but her
efforts were all rejected by the police officers and again a female officer just
laughed at her.

39.     Finally, Mrs. Nunez was able to reach by telephone a friend of her brother's
who she understood was an NYPD detective in another precinct.  She explained to
him what happened, that she needed to know where her husband was and how his
condition was, and that her husband needed to get immediate medical care.

40.     Eventually, the detective called Mrs. Nunez back and told her he had found
her husband, upon information and belief, at another NYPD precinct where he had
been taken and held in custody.

41.     The detective told Mrs. Nunez that he had told the NYPD officers with
whom he spoke that her husband had a medical emergency and needed an

ambulance.  He assured Mrs. Nunez that her husband would be taken to a hospital by ambulance and he told her she could go to the hospital and he gave her the address in Brooklyn for the hospital.

42.    Mrs. Nunez took a taxi to the hospital from Washington Heights in upper Manhattan for the approximately 45 minutes trip to the hospital in Brooklyn, where she finally was reunited with her husband, several hours after he had been beaten and taken into custody.

43.    When Plaintiff Portorreal finally regained consciousness from his diabetic coma, he found himself in a parked ambulance, with two police officers standing next to the ambulance and the ambulance door open.  He was very tightly handcuffed.

44.    He was in excruciating pain from the beating the police officers had given him and from the handcuffs on his wrists.  He told the NYPD police officers standing next to the ambulance that his wrists were in tremendous pain from the handcuffs and he asked them if they could loosen them. They refused.

44.    Next to Portorreal in the ambulance when he regained consciousness was an Emergency Medical Services worker who then began trying to shove some liquid into Mr. Portorreal's mouth, telling him to swallow it, without telling him what it was.  He swallowed the liquid as directed.

10

45.     Plaintiff Portorreal was finally taken into the hospital by the EMS worker

and the two police officers.  He remained handcuffed and in excruciating pain,

despite the fact that the police officers well knew that Mr. Portorreal had been in a

diabetic coma since he was first approached by the police officers and had

committed no crime.  Mr. Portorreal describes the police officers, to the best of his

ability as one Hispanic and one Caucasian.

46.     Mr. Portorreal continued to complain about the extreme pain the handcuffs

were causing him and about the pain in his head, back, and knees.  His knees were

swollen.  He was not taken for any medical testing nor was he given anything that

helped relieve the excruciating pain.  He was simply discharged and found his

wife waiting for him outside the hospital.

47.     The handcuffs were removed from Mr. Portorreal only immediately before

his release from the hospital.  The handcuffs were removed only after one of the

police officers present called a supervisor and explained the situation to him. The

police officer told Mr. Portorreal he was not allowed to remove the handcuffs

unless and until a supervisor approved it.

48.     To this day, Mr. Portorreal continues to get throbbing headaches from the

injuries he sustained through the Defendants' use of excessive force and he has not

regained the full use of his hands because of the pain in his wrists from the

handcuffs.  He has numbness in his hands and has trouble writing.

49.     At all times, with respect to the acts and omissions alleged herein, the

Defendants acted intentionally, wantonly, willfully, in a conscience shocking,

grossly negligent, negligent, reckless, malicious manner and in deliberate

indifference to the Plaintiffs' rights, and were objectively unreasonable.

50.     At all times relevant to this lawsuit, all Defendants acted under color of

state law.

51.     At all times relevant to this lawsuit, the rights of the Plaintiffs that the

Defendants violated were clearly established rights.

52.     Plaintiffs timely filed their notices of claim in full compliance with New

York law, including, but not limited to *General Municipal Law* § 50-e, § 50-h, and

gave their depositions to the City; but after receiving no further communication

regarding their notices of claim, following their depositions, Plaintiffs now timely

file this lawsuit, after waiting the requisite period after filing the notice of claim to

do so.

53.     At all relevant times, the police officer Defendants were employees of the

NYPD, and thus the City, and were acting for, upon, and in furtherance of the

business of their employer and within the scope of their employment.

54.     Consequently, the police officer Defendants are liable for their tortious and

unconstitutional actions and Defendants NYPD and City are liable under the

doctrine of *respondeat superior* for the tortious actions of the Defendant police

officers with respect to the state law claims.

## CAUSES OF ACTION

## COUNT I

### (42 U.S.C. § 1983 - Civil Rights Violations)

55.     Plaintiffs repeat and reallege the allegations set forth above.

56.     By their actions and omissions described above, Defendants Polanco and

the John Doe police officers Defendants violated 42 U.S.C. § 1983, depriving

Plaintiff Portorreal of the following clearly-established and well-settled

constitutional rights protected by the Fourth and Fourteenth Amendments to the

United States Constitution:

     a.     The right to be free from unreasonable searches and seizures;

     b.     The right to be free from excessive and unreasonable force in the course of arrest or detention.

     c.     The right to timely and proper medical care when in police custody.

57.     As a direct and proximate result of the Defendants' acts and/or omissions as

set forth above, Plaintiffs suffered injuries and damages for which Defendants are

liable.

58.     Defendants subjected Plaintiffs to their wrongful conduct, knowingly, maliciously, outrageously, and with conscious disregard for whether the rights and safety of the Plaintiffs and others would be violated by their acts and/or omissions.

59.     The conduct of Defendant Polanco and the John Doe police officers Defendants entitles the Plaintiffs to punitive damages, to punish and deter Defendants, in addition to the compensatory, the general and special damages Defendants are liable for to the Plaintiffs.

60.     Plaintiffs are also entitled to reasonable costs and attorneys fees under 42 U.S.C. § 1988.

## COUNT TWO

### (42 U.S.C. § 1983 - Deliberate Indifference to Serious Medical Needs)

61.     Plaintiffs repeat and reallege the allegations set forth above.

62.     At the time Defendants used excessive force on Plaintiff Portorreal and took him into custody, and all during the time he was in their custody, Mr. Portorreal was in a diabetic coma and in need of immediate medical treatment.

63.     Mr. Portorreal's condition (a diabetic coma) constituted a serious medical condition which was obvious, even to a lay person, as a serious medical condition in need of immediate medical treatment.  He was unconscious and unresponsive.

64.     Defendants knew or should have known that Mr. Portorreal was suffering

from a serious medical condition and needed immediate medical treatment; but they failed and refused to timely get him the medical treatment that he needed and were otherwise deliberately indifferent to his serious medical needs.

65.     Defendants deliberate indifference to Mr. Portorreal's serious medical needs included an inexcusable delay in finally getting him to medically trained personnel who began the necessary treatment to address his serious medical condition.

66.     As a result of the Defendants' deliberate indifference to Mr. Portorreal's serious medical needs, his rights under the Fourteenth Amendment to the United States Constitution were violated and he was otherwise proximately and directly injured.

67.     Defendants subjected Plaintiff Portorreal to their wrongful conduct, knowingly, maliciously, outrageously, and with conscious disregard for whether the rights and safety of the Plaintiffs and others would be violated by their acts and/or omissions.

68.     The conduct of Defendant Polanco and the John Doe police officers Defendants entitles the Plaintiffs to punitive damages, to punish and deter them, in addition to the compensatory, the general and special damages Defendants are liable for to the Plaintiffs.

69.     Plaintiffs are also entitled to reasonable costs and attorneys fees under 42

U.S.C. § 1988.

## COUNT THREE

### (42 U.S.C. § 1983 - Supervisory and Municipal Liability)

70.     Plaintiffs repeat and reallege the allegations set forth above.

71.     On information and belief, the unconstitutional actions and/or omissions of

Defendant Polanco and the John Doe police officers Defendants, as well as others

employed by or acting on behalf of or in concert with the NYPD and/or the City of

New York were taken or omitted pursuant to the following customs, policies,

practices, and/or procedures of the NYPD, stated in the alternative, which were

directed, encouraged, allowed, and/or ratified by policy making officers of the

NYPD and the City of New York:

     a.    To use or tolerate the use of excessive and/or unjustified force during the seizure of a person;
     b.    To engage in or tolerate unreasonable seizures;
     c.    To fail to use appropriate and generally accepted law enforcement procedures in handling medical conditions/emergencies, including frequently encountered or readily foreseeable conditions like a diabetic coma;
     d.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons with diabetic comas and other diabetic medical needs;
     e.    To cover-up violations of constitutional rights by any or all of the following:
          I.    by failing to properly investigate and/or evaluate complaints or

      incidents of unlawful seizures, excessive force, and/or handling of persons having diabetic emergencies;

  ii. by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and

  iii. by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; fail to give accurate information to family members about the location and condition of a person in custody; file false police reports; make false statements; withhold and/or conceal relevant information a family member ought to be entitled to know about a person in custody.

  f. To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct and failing to provide appropriate remedies for the same.

72. Defendants NYPD and City failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant Polanco and other John Doe police officers Defendants, with deliberate indifference to Plaintiffs' constitutional rights, which were thereby violated as described herein.

73. The unconstitutional acts and/or omissions complained of herein were, upon information and belief, revealed to authorized policy makers for Defendant NYPD and/or City, providing them with direct knowledge of the same and they have made a deliberate choice to endorse the decisions and actions made or engaged in by Defendant Polanco and/or the John Doe police officers Defendants, and in so doing, have shown affirmative agreement with such unconstitutional actions and/or omissions, and they have approved, tolerated, and/or ratified the actions of

the individual Defendants.

74.     The aforementioned customs, policies, practices, and procedures, the

failures to properly and adequately hire, train, instruct, monitor, supervise,

evaluate, investigate, and discipline, as well as the unconstitutional orders,

approvals, ratification, and toleration of wrongful conduct by the Defendants, were

a moving force and/or proximate cause of the deprivations of the Plaintiffs'

clearly-established and well-settled constitutional rights in violation of 42 U.S.C.

§ 1983.

75.     Defendants subjected Plaintiffs to their wrongful conduct, depriving

Plaintiffs of their rights described herein, knowingly, maliciously, and with

conscious and reckless disregard for whether the rights and safety of Plaintiffs and

others would be violated.

76.     As a direct and proximate result of the unconstitutional actions, omissions,

customs, policies, practices, and procedures of Defendant NYPD and/or City,

Plaintiff sustained serious injuries and are entitled to damages, penalties, costs and

attorney fees pursuant to 42 U.S.C. §§ 1983 and 1988.

## COUNT FOUR

### (False Arrest)

77.     Plaintiffs repeat and reallege the allegations set forth above.

18

78.     The police officer Defendants unlawfully, unjustifiably, and intentionally arrested, transported, detained, and deprived Plaintiff Portorreal of his liberty against his will, and imprisoned him.

79.     These actions by these Defendants, including the false arrest and imprisonment of Portorreal were without probable cause to believe that Mr. Portorreal had committed an offense for which the law permits an arrest or detention.

80.     All of the foregoing occurred without any fault on the part of the Plaintiffs.

81.     At all relevant times, the police officers Defendants were employees of the NYPD, and thus the City, and were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

82.     Consequently, the police officers Defendants are liable for their tortious actions and omissions and Defendants NYPD and City are liable under the doctrine of *respondeat superior* for the tortious actions and omissions of the Defendant police officers.

83.     Accordingly, Plaintiffs are entitled to damages from the Defendants.

## COUNT FIVE

### (Assault and Battery)

84.     Plaintiffs repeat and reallege the allegations set forth above.

85.     During the course of unlawfully arresting and detaining Plaintiff Portorreal, the Defendant police officers touched Mr. Portorreal without his consent and caused him bodily harm.

86.     At all relevant times, the police officer Defendants were employees of the NYPD, and thus the City, and were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

87.     Consequently, the police officer Defendants are liable for their tortious actions and Defendants NYPD and City are liable under the doctrine of *respondeat superior* for the tortious actions of the Defendant police officers.

88.     Accordingly, Plaintiffs are entitled to damages from the Defendants.

## COUNT SIX

**(Excessive Force)**

89.     Plaintiffs repeat and reallege the allegations set forth above.

90.     During the course of unlawfully seizing and arresting Plaintiff Portorreal, the police officer Defendants used more force than necessary to detain him.

91.     During the course of unlawfully seizing and arresting Plaintiff Portorreal, the police officer Defendants used an unreasonable amount of force and caused Plaintiff Portorreal unnecessary physical injuries and caused Plaintiffs P.A.P. and Nunez unnecessary emotional injuries.

92.     At all relevant times, the police officers Defendants were employees of the NYPD, and thus the City, and were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

93.     Consequently, the police officers Defendants are liable for their tortious actions and Defendants NYPD and City are liable under the doctrine of respondeat superior for the tortious actions of the Defendant police officers.

94.     Accordingly, Plaintiffs are entitled to damages from the Defendants.

## COUNT SEVEN

### (Intentional Infliction of Emotional Distress)

95.     Plaintiffs repeat and reallege the allegations set forth above.

96.     The conduct complained of herein, including, but not limited to, (1) the outrageous use of excessive force on Mr. Portorreal, knowing the six year old Plaintiff, P.A.P. could see it all; (2) keeping Mr. Portorreal in handcuffs, even after recognizing he had been unconscious due to a diabetic coma and had committed no crime, and knowing that they were causing him excruciating pain, and continuing to keep him in custody; and (3) refusing to tell Plaintiff Nunez any information about her husband, his location, his condition, despite her obvious extreme concern, constituted the intentional infliction of emotional distress by the Defendants which caused injury to Plaintiffs.

97.     Such conduct by the Defendants was extreme and outrageous conduct; it was engaged by the Defendants with the intent to cause, or disregard of a substantial probability of causing, severe emotional distress; and it proximately caused severe emotional distress for the Plaintiffs.

98.     At all relevant times, the police officers Defendants were employees of the NYPD, and thus the City, and were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

99.     Consequently, the police officer Defendants are liable for their tortious and unconstitutional actions and omissions and Defendants NYPD and City are liable under the doctrine of *respondeat superior* for the tortious actions of the Defendant police officers.

## COUNT EIGHT

### (Negligent Infliction of Emotional Distress)

100.    Plaintiffs repeat and reallege the allegations set forth above.

101.    The conduct complained of herein, including, but not limited to, (1) the outrageous use of excessive force on Mr. Portorreal, knowing the six year old Plaintiff, P.A.P. could see it all; (2) keeping Mr. Portorreal in handcuffs, even after recognizing he had been unconscious due to a diabetic coma and had committed no crime, and knowing that they were causing him excruciating pain, and

continuing to keep him in custody; and (3) refusing to tell Plaintiff Nunez any

information about her husband, his location, his condition, despite her obvious

extreme concern, constituted the negligent infliction of emotional distress by the

Defendants which caused injury to Plaintiffs.

102.    Defendants owed a duty of reasonable care to Plaintiff Juan B. Portorreal in

their encounter with him and while he was in their custody and control.

103.    Defendants also owed a duty to Plaintiff P.A.P. to not subject her to having

to see them use brutal, excessive force against Mr. Portorreal and to not subject

her to seeing him handcuffed and taken into custody when he had committed no

crime and there was no probable cause to believe he had.

104.    Defendants also owed a duty to Plaintiff Mrs. Nunez to provide her with

honest, candid information about her husband's location and condition, especially

when they saw how distraught she was in her concern for his well-being.

105.    Defendants breached each of these duties and Plaintiffs were injured and

suffered severe emotional distress as a proximate and direct result of the

Defendants' breaches of their duties.

106.    Such conduct by the Defendants was extreme and outrageous conduct.

107.    At all relevant times, the police officers Defendants were employees of the

NYPD, and thus the City, and were acting for, upon, and in furtherance of the

business of their employer and within the scope of their employment.

108.    Consequently, the police officers Defendants are liable for their tortious and unconstitutional actions and omissions and Defendants NYPD and City are liable under the doctrine of *respondeat superior* for the tortious actions of the Defendant police officers.

## COUNT NINE

### (Violations of the New York State Constitution Article 1, § 12)

109.    Plaintiffs repeat and reallege the allegations set forth above.

110.    Article 1, § 12 of the New York Constitution protects the right to be free from "unreasonable searches and seizures."  The illegal arrest of Mr. Portorreal, as described herein constituted an unreasonable seizure prohibited by the New York Constitution.

111.    These unconstitutional abuses and violations were, and are, directly and proximately caused by policies, practices and/or customs devised, implemented, enforced, promoted, encouraged, and sanctioned by the NYPD and therefore, the City, including, but not limited to: (a) the failure to adequately and properly screen, train, and supervise NYPD officers and, specifically the failure to adequately train on how to recognize and respond to a diabetic coma, a regularly occurring condition foreseeable to encounter; (b) the failure to properly and

24

adequately monitor and discipline NYPD officers, and © the overt and tacit encouragement, sanctioning, ratification and failure to rectify, the NYPD's unlawful arrest and imprisonment practices.

112.   At all relevant times, the police officers Defendants were employees of the NYPD, and thus the City, and were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

113.   Consequently, the police officers Defendants are liable for their tortious and unconstitutional actions and omissions and Defendants NYPD and City are liable under the doctrine of *respondeat superior* for the tortious actions of the Defendant police officers.

## CLAIMS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1.   Compensatory damages in an appropriate amount to compensate the Plaintiffs for the injuries they suffered from the Defendants, including for the violation of their rights under the United States Constitution and the laws of the State of New York, and for the pain and suffering and other injuries they suffered and for which Defendants are jointly and severally liable;

2.   Punitive damages against the individual Defendants in an amount sufficient to punish them for their conduct and to deter such conduct or similar conduct in the

future.

3.      Reasonable costs and attorneys' fees.

4.      Such other and further relief as this Court deems just and equitable.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all claims.

Dated: February 24, 2023.

                        /s/ David I. Schoen
                        David I. Schoen (DS 0860)
                        Counsel for Plaintiffs

David I. Schoen
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone:  334-395-6611
Facsimile: 917-591-7586
E-Mail: DSchoen593@aol.com
        Schoenlawfirm@gmail.com